FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

98 JUL 30 PM 1:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **BETTY STATEN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **CV-98-PT-0055-M** |
| | ) |
| **CONGRESS LIFE INSURANCE** | ) |
| **COMPANY, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ENTERED**

JUL 30 1998

**MEMORANDUM OPINION**

This cause comes on to be heard on defendants' Motion For
Summary Judgment filed on May 5, 1998. Betty Staten, an employee
at Marshall Manor Nursing Home, brought this action for the
denial of medical benefits under a contract of insurance she had
with Congress Life Insurance Company ("Congress"). Staten seeks
coverage for the treatment of what was eventually diagnosed as
Brown Sequard Syndrome, spinal cord compression, cervical
myelopathy, spastic paresis, mild erethrocele and an herniated
disk at C6-7. Congress and third party administrator, Corporate
Benefit Services of America ("CBSA"), denied coverage for the
treatment of these conditions as preexisting. Further,
defendants argue that ERISA preempts any such claims for benefits
and judgment is due as a matter of law.

1

## II. **FACTUAL BACKGROUND**[1]

Betty Staten worked in the laundry room of Marshall Manor Nursing Home for thirteen and a half years until December 8, 1996.  Staten dealt with an agent from Congress named Wanda Jones.  Jones assisted Staten in applying for a policy of insurance with Congress.  Since this policy was to be billed through an employer, Jones had to secure the employer's signature on a form entitled, "List Billing Agreement."  The policy was an individual major medical policy.  Therefore, if the employee terminated her employment with that employer, she was entitled to maintain her insurance regardless of her employment elsewhere. The List Billing Agreement includes the following caveat:

> Third party and Applicant understand and agree that the insurance for which Applicant has applied: a)is personal to the Applicant and is NOT part of an Employer-sponsored plan; and 2) is neither intended to be governed by nor intended to comply with  any employment related laws such as  COBRA, ERISA, ADEA or FPA.[2]

On or about September 23, 1996, Staten completed a "Subscription Agreement and Application for Insurance Under NHCT Master Policy."  The application states,

> If approved, the Applicant understands and agrees that

---

[1]The "facts" are stated favorably to the plaintiff and may or may not be the actual facts.

[2]Defendants urge the court that no such List Billing Agreement, including the ERISA caveat, was signed by their representatives.  Plaintiff has not produced one so signed.

2

the Trustee, Administrator and the Insurer, jointly or
severally, are not now and shall not become under the Trust
Agreement an administrator or fiduciary for any purpose
whatsoever under the Employee Retirement Income Security Act
of 1974 ("ERISA") as amended.

In February, 1996, Staten was seen by her family physician,
Dr. Thomas Darnell, complaining of shoulder pain.  At that time
he also prescribed medication to treat her high blood pressure.
In March, she returned for check up on her blood pressure and she
still complained of some pain in her shoulder.  She indicated no
problems with her back at that time.  In late 1996 plaintiff
began experiencing problems with her legs.  They began to feel
numb, and weakened to the point of her not being able to walk
unassisted.  Frederick Staten, plaintiff's son did not recall her
complaining about problems with her back at this time.  Plaintiff
was referred to a neurologist, Dr. Ngo, who performed a
neurological examination and ordered tests including an MRI.  Dr.
Ngo recommended that she be taken to another hospital for
surgery.  Following November 1996, Ms. Staten was diagnosed and
treated for: herniated disk pulposus at C6-7, Brown-Sequard
syndrome, spinal cord compression, cervical myelopathy, spastic
paresis, mild urethrocele and moderate retrocele.  On
December 15, 1996, Dr. Pickett performed an anterior cervical
disectomy and fusion at C6-7.

On April 28, 1997, Staten requested a review of the denial
of medical claims for the above treatment and procedures.  CBSA

3

responded claiming that since her medical records indicated she had been "seen for hypertension, back and shoulder pain on 2-19-96", and this was prior to the effective date of 10-17-96, the denial must stand.

### III. PARTIES' CONTENTIONS

#### A. Defendants' Contentions.

Defendants contend that this claim for denial of benefits, pled as state law causes of action are preempted by ERISA and due to be dismissed. Moreover, judgment as a matter of law is due to be granted because there is no genuine dispute that plaintiff's condition preexisted the effective date of coverage, thereby excluding her claim.

Staten received a policy of medical insurance through her employer as an employment benefit. Marshall Manor paid one-half of each employee's premium. The remainder was to be deducted from the employee's payroll. An ERISA plan was being provided to Staten in this case. The facts meet the test set out in Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1345 (11th Cir. 1994). Marshall Manor maintained or established a plan, fund or program for the purpose of providing medical benefits to participants and their beneficiaries.

Defendants maintain that Marshall Manor never executed the "List Billing Agreement," as referred to above. Linda Meinjohans

4

of Marshall Manor testified at deposition that she had never seen one of these forms in her dealing with Wanda Jones. The copy of the List Billing Agreement that Marshall did execute did not include language referencing ERISA. The copy of the List Billing Agreement relied upon so heavily by the plaintiff, was never seen by Marshall and never signed. The Agreement Marshall had signed made no mention of the key ERISA exemption language.

The court should not rely on the application's ERISA exemption language for two other reasons as well. First, the language says only that the Trustee, Administrator and the Insurer shall not become an administrator or fiduciary for any purpose whatsoever under ERISA. The clause does not make a choice of law selection that excludes ERISA. Second, a party's attempt to disclaim fiduciary status is void if that party actually performs the function of a fiduciary.

In any event, defendants are entitled to summary judgment in that they properly adjudicated Staten's claim. Ms. Staten had a preexisting condition. The certificate language defines preexisting condition as:

> "Within 12 months prior to a participant's effective
> date of coverage under the policy, he/she may have : 1) Had
> an illness or injury diagnoses; 2) received care, medical
> services or treatment for an illness or injury or; 3) had
> symptoms of an illness or injury which would cause an
> ordinarily prudent person to seek diagnosis, care, medical
> services or treatment.

Staten's back problems did not start in late 1996. Her medical

5

records indicate she had a long history of such problems.
Beginning in March 1993, she complained of pain in the middle of
her back that radiates down both legs. In May, 1995, she saw Dr.
Darnell for pain on the left side of her back that radiated down
her left leg. Her visits to Dr. Darnell in February and March of
1996 were also for complaints about back and shoulder pain.
Staten even admits in her deposition testimony that her symptoms
started well before the October 17, 1996 effective date. She
said that her symptoms began in September, 1996.

## B. Plaintiff's Contentions.

Plaintiff contends that her state law claims survive any
argument of ERISA preemption and disputed issues of fact preclude
granting of summary judgment.

First, Staten argues that the defendants are not ERISA
entities as defined by Morstein. Moreover, the suit brought
against defendants, non-ERISA entities, does not affect relations
among principal ERISA entities. She relies on the List Billing
Agreement to support the fact that the defendants disclaimed any
ERISA designation and therefore could not be ERISA entities as
fiduciaries. Regardless, Staten argues, defendants have not
satisfied their burden of proving they are ERISA entities. She
urges that since defendants failed to offer evidence of a

6

fiduciary obligation under ERISA, the court should conclude that plaintiff filed suit against non-ERISA entities. As evidence that the suit does not affect relations among principal ERISA entities, Staten contends that the Marshall Manor is not being affected. The fund is not self funded, no plan document created a fiduciary relationship between defendants and Marshall Manor and that, per defendants' admission, the insurance policy in question was not one that affected Marshall under ERISA. Finally, plaintiff argues that the language of the subscription agreement and list bill agreement waived ERISA preemption through choice of law.

If the court accepts the preemption argument, plaintiff contends, she will have no remedy or recourse available to recover benefits. There will be no proper party to sue under an ERISA claim. No ERISA entity will emerge that she can properly name as a defendant.


Finally, plaintiff argues that she has raised at least a fact issue regarding the preexistence of her condition. She claims that the defendants rely on the February and March 1996 visits to Dr. Darnell as the basis of their denial. Defendants rely on nothing more than his doctor's notes to conclude the preexistence of the back problems. They did not consult the doctor, nor did they seek the opinion of an independent

7

physician. Plaintiff argues that this is not sufficient to establish as a matter of law that the condition was preexisting.

The record shows that the condition was not preexisting. CBSA had no knowledge of any injury or illness diagnosed within the 12 month period. The February and March visits do not evidence a diagnosis of a back condition. Furthermore, she did not receive care or services for the same illness or injury in February or March. Those visits were for different illnesses, unrelated to the November, 1996 treatments and diagnoses. The February visit related to complaints of shoulder pain while the lower back pain complained of related to bursitis. The March visit was aimed at rechecking her blood pressure and included no complaints of back pain. The late 1996 problems began with complaints about her legs. CBSA did little, if anything, to determine whether the February complaints of back pain were in any way related to the list of illnesses for which she was diagnosed and treated in November-December 1996. At no time prior to feeling the symptoms that led to her surgery in December had she ever complained of leg problems or trouble walking.

Finally, Staten points the court to the inconsistent treatment that her claims have received over the course of her treatments. Some claims were denied as preexisting; others, of a

8

similar nature, regarding a common problem, were paid without
inquiry.

### Court's Analysis

There is preemption of most state claims when they "relate
to a plan":

A. Is there a "plan?"

The pertinent statute defines the term "employee benefit
plan" as including, inter alia, any "employee welfare benefit
plan," 29 USC §1002(3) which the statute in turn defines as,

> [A]ny plan, fund or program... established or
> maintained by an employer or by an employee
> organization...for the purpose of providing for its
> participants or their beneficiaries, through the
> purchase of insurance or otherwise...medical surgical
> or hospital care or benefits.  29 U.S.C. §1002(1)

The Eleventh Circuit has stated that,

> To be an employee welfare benefit plan, the
> intended benefits must be health, accident, death or
> disability, unemployment or vacation benefits; the
> intended beneficiaries must include union members,
> employees, former employees or their beneficiaries; and
> an employer or employee organization, or both, and not
> individual employees or entrepreneurial businesses,
> must establish or maintain the plan, fund or program.
> Randol v. Mid West National Life Insurance Company of
> Tennessee, 987 F.2d 1547, 1550 (11th Cir. 1993)
> (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373
> (11th Cir. 1982)(en banc).

The Donovan court also stated, "a plan, fund, or program,

9

[exists] under ERISA...if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." 688 F.2d at 1373.

In Randol, the court found that the employer "maintained" the plan, fund or program because, the employer wrote the first check purchasing the policies, established a system whereby the premiums would be paid monthly by means of a bank draft on the corporate account, contributed $75 per employee per month toward the premiums, and collected from the employees the balance of the premiums through a withholding system. The employer did the forgoing in order to facilitate his employees' obtaining health coverage. Randol at 1551. This court concludes that there was a "Plan."

B. Suit against non ERISA entity affects relations among principal ERISA entities

"ERISA entities are the employer, the plan, the plan fiduciaries and the beneficiaries under the plan." Morstein at 722.

One is a fiduciary with respect to a plan to the extent i)he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ...or (iii)he has any discretionary authority or discretionary

10

responsibility in the administration of such plan. 29 U.S.C.

§ 1002 (21)(A).[3]

29 U.S.C. § 1110(a) provides:

Except as provided in sections 1105(b)(1) and 1105(d)
of this title, any provision in an agreement or
instrument which purports to relieve a fiduciary from
responsibility or liability for any responsibility,
obligation, or duty under this part shall be void as
against public policy.

The court notes that, under the statute, such provisions are not

merely voidable, but void.  The court concludes that

notwithstanding any language to the contrary in various

documents, the plan here relates to ERISA entities and the state

law claims are preempted.

The defendants have acknowledged that any decision of this

court must be de novo.  The court concludes that there is a

genuine issue of fact as to whether plaintiff's subject

condition(s) were preexisting.

The motion will be granted in part and denied in part.

---

[3]See Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186
(11th Cir. 1997).

11

This __23__ day of  July     , 1998.

ROBERT B. PROPST

**SENIOR UNITED STATES DISTRICT JUDGE**

12